# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| SCOTT ANDREW LEWIS,<br>On Behalf of Himself and<br>All Others Similarly Situated,<br><br>     Plaintiffs,<br><br>v.<br><br>ASAP LAND EXPRESS, INC.,<br><br>     Defendant. | CIVIL ACTION<br><br>No. 07-2226-KHV |

## MEMORANDUM AND ORDER

Scott Andrew Lewis brings suit against ASAP Land Express, Inc. ("ASAP"), on behalf of himself and others similarly situated seeking recovery of unpaid minimum wages and overtime compensation under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 et seq. This matter comes before the court on Defendant's Motion For Summary Judgment ("Defendant's Motion") (Doc. #17) filed November 5, 2007. For reasons stated below, the Court overrules the motion.

## Legal Standards

Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. See Fed. R. Civ. P. 56(c); accord Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986); Vitkus v. Beatrice Co., 11 F.3d 1535, 1538-39 (10th Cir. 1993). A factual dispute is "material" only if it "might affect the outcome of the suit under the governing law." Anderson, 477 U.S. at 248. A "genuine" factual dispute requires more than a mere scintilla of evidence. Id. at 252.

The moving party bears the initial burden of showing the absence of any genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Hicks v. City of Watonga, 942 F.2d 737, 743 (10th Cir. 1991). Once the moving party meets its burden, the nonmoving party must demonstrate that genuine issues remain for trial "as to those dispositive matters for which [he] carries the burden of proof." Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc., 912 F.2d 1238, 1241 (10th Cir. 1990); see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986); Bacchus Indus., Inc. v. Arvin Indus., Inc., 939 F.2d 887, 891 (10th Cir. 1991). The nonmoving party may not rest on his pleadings but must set forth specific facts. Applied Genetics, 912 F.2d at 1241.

The Court must view the record in a light most favorable to the party opposing the motion for summary judgment. Deepwater Invs., Ltd. v. Jackson Hole Ski Corp., 938 F.2d 1105, 1110 (10th Cir. 1991). Summary judgment may be granted if the nonmoving party's evidence is merely colorable or is not significantly probative. Anderson, 477 U.S. at 250-51. "In a response to a motion for summary judgment, a party cannot rely on ignorance of facts, on speculation, or on suspicion, and may not escape summary judgment in the mere hope that something will turn up at trial." Conaway v. Smith, 853 F.2d 789, 794 (10th Cir. 1988).

**Factual Background**

The following material facts are uncontroverted, deemed admitted or, where disputed, viewed in the light most favorable to plaintiff, the nonmoving party:

ASAP operates a delivery service. As part of its business, ASAP employs an administrative staff and maintains offices, including office equipment (e.g., computers). ASAP also maintains its own trucks, forklifts and loaders. ASAP sets the rates which customers pay for its delivery services.

From April to September of 2005, plaintiff worked for ASAP as a delivery driver.  During his employment, plaintiff entered into an agreement with ASAP which was titled "INDEPENDENT CONTRACTING AGREEMENT" and which characterized plaintiff as an independent contractor ("IC").[1]  See Exhibit 2, attached to Defendant's Motion (Doc. #17).  Under the agreement, plaintiff was to perform pickup and delivery services for the benefit of ASAP.

The agreement included several terms and conditions.  In paragraph one of the terms and conditions, ASAP agreed to pay plaintiff "a daily fee based on the parameters of the route, and plaintiff agreed to "submit an invoice to ASAP for each day that services are rendered."  Exhibit 2, attached to Defendant's Motion (Doc. #17) ¶ 1.  ASAP paid plaintiff based on the deliveries that he completed; it did not pay plaintiff an hourly wage or monthly salary.  ASAP did not pay bonuses for

---

[1]     ASAP submits a generic copy of this form agreement.  Through declaration, ASAP president Jim Johnston represents that ASAP has misplaced the original agreement which plaintiff signed.  See Declaration Of Jim Johnston, attached as Exhibit 1 to Defendant's Motion (Doc. #17) ¶ 3.  Plaintiff argues that without the original, signed agreement, the Court cannot consider the substance of the agreement on summary judgment.  The Court disagrees.

On summary judgment, the Court considers evidence which a party authenticates through affidavit.  See Fed. R. Civ. P. 56(e); Pound v. Airosol Co., 316 F. Supp.2d 1079, 1083 (D. Kan. 2004) (absent proper authentication, extrinsic documents inadmissible on summary judgment).  Here, Johnston declares with certainty that plaintiff "signed ASAP's form independent contractor agreement" and was a party to the agreement throughout his employment.  Declaration Of Jim Johnston, attached as Exhibit 1 to Defendant's Motion (Doc. #17) ¶ 3.  Plaintiff does not suggest that he did not sign the agreement or that Johnston is not competent to testify that he did so.  In fact, plaintiff states through affidavit that ASAP required him to sign an independent contractor agreement.  See Affidavit Of Plaintiff Scott Lewis, attached as Exhibit A to Plaintiff Scott Lewis' Memorandum In Opposition To Defendant ASAP Land Express's Motion For Summary Judgment ("Plaintiff's Opposition") (Doc. #23) filed February 12, 2008 ¶ 24.  Further, plaintiff does not suggest that the substance of the generic form agreement which ASAP presents is meaningfully different from the agreement which he actually signed.  In fact, plaintiff uses the same generic form agreement as support for his statement of uncontroverted facts.  See Plaintiff's Opposition (Doc. #23) at 10.  Under these circumstances, the generic form agreement is competent evidence for purposes of summary judgment.  See Goodwin v. Feldman, No. CIV-07-389-C, 2007 WL 4209032, at *1 n.2 (W.D. Okla. Nov. 26, 2007) (copy of contract authenticated through affidavit considered on summary judgment).

solicitation of extra business and did not penalize plaintiff if a customer withdrew its business. ASAP did not compensate delivery drivers with prior experience at a higher level than non-experienced drivers.

In paragraph two of the terms and conditions, ASAP agreed that it would "have no right to control or direct the details, manner or means by which [plaintiff would] accomplish the results of the services performed," and that plaintiff was "free to travel [his] own route and cover the territory as [he] deem[ed] appropriate." Id. ¶ 2. ASAP assigned its delivery drivers two shifts: morning and afternoon. ASAP required plaintiff to begin a morning shift between 6:00 a.m. and 7:30 a.m., and an afternoon shift by checking in at the office by 2:15 p.m. During his shifts, ASAP dictated the schedule for deliveries and pick-ups, and did not allow plaintiff to reschedule delivery or pick-up times.[2] ASAP required plaintiff to maintain a cellular telephone so that it could contact him during his shifts regarding deliveries. Because ASAP dictated the schedule of deliveries and pick-ups, plaintiff could not exercise any discretion in the route he took to complete his work. Plaintiff could not make extra deliveries outside of his assigned route or scheduled shifts. At the end of each shift, ASAP required plaintiff to return to its office to check out.

ASAP required plaintiff to use a vehicle at least the size of a minivan to make his deliveries. If plaintiff's transportation broke down during his shift, ASAP required him to rent a substitute vehicle and complete his route. ASAP supplied many of the materials which plaintiff used to complete his deliveries, including coolers, dry ice, dollies and keys for various businesses to which plaintiff made deliveries.

---

[2] For example, plaintiff could not reschedule a pick-up if the customer did not have the package ready at the designated time. In that circumstance, ASAP required plaintiff to wait at the premises and complete the pick-up before moving to other deliveries or pick-ups.

Paragraph two of the terms and conditions also provided that ASAP would give plaintiff no training because he was experienced in the courier business. See id. On plaintiff's first day of work, a supervisor instructed him on his assigned route, the rules of interaction with customers, and the location of boxes for delivery and pick-up.

Paragraph three of the terms and conditions provided that "ASAP shall not be liable to IC for any expenses paid or incurred by IC unless otherwise agreed in writing by both parties." Id. ¶ 3. Plaintiff provided his own delivery vehicle and was solely responsible for maintenance of that vehicle. ASAP reimbursed plaintiff for gasoline costs associated with his deliveries. Plaintiff was not personally liable for property which he damaged during delivery.

Paragraph four of the terms and conditions described the agreement as one "for independent contracting services." Id. ¶ 4  It further provided that "ASAP does not provide any benefits such as unemployment insurance, health insurance or worker's compensation insurance for the IC." Id. During his employment, plaintiff did not receive such benefits.

Paragraph five of the terms and conditions provided as follows:

IC and ASAP agree that no deduction on behalf of any taxing authority will be deducted from the contract fee paid by ASAP. IC is responsible for payment of all Federal, State and local taxes. Both parties agree that the IC shall not at any time for any reason be construed or in any fashion designated an employee of ASAP.

Id. ¶ 5. ASAP did not treat plaintiff as an employee for tax purposes. Specifically, ASAP did not withhold any taxes from plaintiff's pay and filed a Form 1099-MISC information return with respect to the compensation which it paid to plaintiff in 2005.[3]

---

[3] A Form 1099-MISC information return reflects that the payer (i.e. ASAP) treats the recipient (i.e. plaintiff) "as a self-employed worker, also referred to as an independent contractor," and "has determined that an employer-employee relationship does not exist." Frequently Asked Tax
(continued...)

-5-

Paragraph six of the terms and conditions provided as follows:

> This agreement is not exclusive. IC has the right to perform services for others during the term of this agreement. IC agrees not to solicit the customers of ASAP during the terms of this agreement and so doing will be an item of default under this agreement. Nothing herein shall prevent the IC from performing transportation services for any other person, firm or company.

Id. ¶ 6. During his shifts, ASAP did not require plaintiff to affix an ASAP logo on his delivery vehicle. During his employment, ASAP required plaintiff to work a regular schedule of hours each day which prevented him from procuring additional employment outside ASAP. ASAP did not permit plaintiff to develop his own clientele.

Paragraph seven of the terms and conditions provided that "[t]his contract may be assigned, in whole or part, by IC. IC shall provide ASAP with 30 days prior written notice of IC intention of assignment." Id. ¶ 7. If plaintiff could not complete his scheduled deliveries, ASAP expected him to find a substitute driver. ASAP maintained discretion to approve the substitute driver and required that the substitute driver sign the same "INDEPENDENT CONTRACTING AGREEMENT." ASAP would have fired plaintiff if he missed more than one day of work.

Paragraph ten permitted ASAP to terminate the agreement on 24 hours notice for unsatisfactory performance. See id. ¶ 10. Paragraph 11 required plaintiff to give ASAP 30 days written notice of termination or otherwise "be responsible for any additional costs incurred by ASAP for securing a new independent contractor" to replace him. Id. ¶ 11. Plaintiff understood that his agreement with ASAP was not limited in duration.

Under the FLSA, plaintiff seeks recovery of unpaid minimum wages and overtime

---

[3](...continued)
Questions And Answers, http://www.irs.gov/faqs/faq-kw5.html (last visited Mar. 18, 2008).

compensation. ASAP argues that it is entitled to summary judgment because plaintiff was an independent contractor and did not fall within the protection of the FLSA.

## **Analysis**

The FLSA governs the payment of minimum wages and overtime compensation between an employer and its employees. See 29 U.S.C. §§ 206-207. An independent contractor cannot maintain a claim under the FLSA. See Johnson v. Unified Gov't of Wyandotte County/Kansas City, Kan., 371 F.3d 723, 727 (10th Cir. 2004) (to recover under FLSA, plaintiffs must establish that they were employees – rather than independent contractors – of defendant). ASAP argues that it is entitled to summary judgment on plaintiff's FLSA claim because plaintiff operated as an independent contractor.

The FLSA defines an employee as "any individual employed by an employer." 29 U.S.C. § 203(e)(1). In turn, an employer "includes any person acting directly or indirectly in the interest of an employer in relation to an employee," id. § 203(d), and to employ means to "suffer or permit to work," id. § 203(g). The Supreme Court has emphasized that the "striking breadth" of the definition of employ "stretches the meaning of 'employee' to cover some parties who might not qualify as such under a strict application of traditional agency principles." Nationwide Mut. Ins. Co. v. Darden, 503 U.S. 318, 326 (1992). For this reason, courts considering the application of the FLSA are not limited by the parties' contractual terminology or by the traditional common law concepts of "employee" or "independent contractor." Dole v. Snell, 875 F.2d 802, 804 (10th Cir. 1989).

To determine whether an individual is covered under the FLSA, the Court applies the economic realities test, which focuses on "whether the individual is economically dependent on the business to which he renders service, or is, as a matter of economic fact, in business for himself."

Doty v. Elias, 733 F.2d 720, 722-23 (10th Cir. 1984) (internal citations omitted).  Under this test, the Court considers the following factors: (1) the degree of control which the alleged employer exerts over the worker; (2) the worker's opportunity for profit or loss; (3) the worker's investment in the business; (4) the permanence of the working relationship; (5) the degree of skill required to perform the work; and (6) the extent to which the work is an integral part of the alleged employer's business.  Baker v. Flint Eng'g & Constr. Co., 137 F.3d 1436, 1440 (10th Cir. 1998).  None of the factors alone is dispositive; the Court assesses the totality of the circumstances.  Id. at 1441.  Although the ultimate question whether plaintiff acted as an employee or an independent contractor is a question of law, the analysis first involves consideration of the historical facts surrounding plaintiff's employment and an application of those facts to the six factors of the economic realities test, which raise questions of fact.  Id. at 1440.

**I.     Degree Of Control**

Typically, an independent contractor acts autonomously or with some degree of independence which sets him apart from what one would consider normal employee status.  Dole, 875 F.2d at 806. In this regard, ASAP argues that it did not control the manner in which plaintiff performed his duties. Specifically, ASAP states that plaintiff controlled his daily schedule, accepted deliveries at will, set his own delivery route, took vacation at will and found substitute delivery drivers as necessary.  The record, however, does not compel the conclusion that plaintiff acted with such independence.

As detailed above, the record contains evidence that ASAP controlled which shifts plaintiff worked, and, during those shifts, controlled the particular schedule for deliveries and pick-ups.  As a tool of its control, ASAP required plaintiff to maintain a cellular telephone during his shifts so that it could rearrange his deliveries and pick-ups as necessary.  By this control, ASAP effectively

dictated the route which plaintiff drove during his shift. Plaintiff was unable to make extra deliveries outside of his assigned route. At the end of each shift ASAP required plaintiff to return to its office to check out. This regimented arrangement suggests that plaintiff acted as an employee. See Dole, 875 F.2d 802, 808 (10th Cir. 1989) (citing Goldberg v. Whitaker House Coop., 366 U.S. 28, 32 (1961) (finding employee status of workers regimented under one organization, manufacturing what organization desires and receiving what compensation organization dictates)).

ASAP further argues that plaintiff acted as an independent contractor because he was free to accept work from third parties. For purposes of employment status under the FLSA, the mere opportunity to accept additional employment is not material; as a matter of economic reality, the outside work which plaintiff actually performs is dispositive. Id. Here, the record contains evidence that the regular shift schedule which ASAP imposed on plaintiff prevented him from obtaining outside employment.

The record contains additional indicia of the control which ASAP exercised over plaintiff. Although the agreement stated that plaintiff was free to travel any route he chose, supervisors trained him on an assigned route when he began working for ASAP. Supervisors also trained plaintiff on the rules of customer interaction, which suggests that he was not in fact free to accomplish his work however he saw fit. ASAP controlled the means by which plaintiff made his deliveries by requiring him to maintain a vehicle at least the size of a minivan and by requiring him to rent substitute transportation if necessary. ASAP also reserved the right to approve any substitute driver which plaintiff procured, further limiting his autonomy. Because ASAP would have terminated plaintiff if he had missed more than one day of work, plaintiff was not free to come and go as he pleased. On this record, the Courts finds a genuine issue of material fact whether plaintiff enjoyed a level of

autonomy or independence which set him apart from normal employee status.

**II.     Opportunity For Profit Or Loss**

Generally, an independent contractor undertakes the risks of profit and loss usually associated with an independent business. Id. at 810. ASAP argues that because it paid plaintiff by the number of deliveries that he performed – rather than an hourly wage – plaintiff's profit was solely the product of his own conduct. For purposes of employment status under the FLSA, however, the mere fact that ASAP paid plaintiff by the delivery does not create an opportunity for profit. See id. at 809 (toiling for money on piecework basis more like wages than opportunity for profit). Similarly, plaintiff did not accept a risk of loss simply because he would have received less pay had be chosen to make fewer deliveries. See id. at 810 (reduction in money earned not a loss sufficient to satisfy criteria for independent contractor). ASAP did not pay plaintiff bonuses for solicitation of extra business and did not penalize plaintiff if a customer withdrew its business.

Even if plaintiff was hypothetically able to profit by making extra deliveries, the record contains evidence that ASAP prevented him from accepting deliveries outside of his assigned route, which effectively denied plaintiff whatever independent opportunity he might have had for profit or loss. Moreover, it is uncontroverted that ASAP maintained exclusive control over the rates which customers paid for the delivery service. These characteristics of plaintiff's work suggest that he acted as an employee. Cf. Baker, 137 F.3d at 1441 (opportunity for profit or loss exists where individual may bid on jobs and set his own schedule). On this record, the Court finds a genuine issue of material fact whether plaintiff undertook the risks of loss and profit usually associated with an independent business.

### III.   Investment In Business

The comparison of a worker's individual investment to the employer's investment in the overall operation helps to distinguish between employees and independent contractors. Id. at 1442. Under this factor, the Court considers "the amount of large capital expenditures, such as risk capital and capital investments, not negligible items, or labor itself." Dole, 875 F.2d at 810.  ASAP argues that plaintiff acted as an independent contractor because he used his own personal vehicle and was responsible for maintenance of that vehicle.  Generally, however, the fact that a worker supplies his own tools does not preclude a finding of employee status.  Id.  In the context of delivery services, courts have rejected the notion that an individual's use of his personal vehicle renders him an independent contractor.  See, e.g., Herman v. Express Sixty-Minutes Delivery Serv., Inc., 161 F.3d 299, 304 (5th Cir. 1998) (although investment in vehicle no small matter, it is diluted when vehicle used for personal purposes; even considering maintenance, driver's relative investment in vehicle not significant); Sakacsi v. Quicksilver Delivery Sys., Inc., No. 8:06-cv-1297-T-24-MAP, 2007 WL 4218984, at *6 (M.D. Fla. Nov. 28, 2007) (without evidence that driver used vehicle exclusively for delivery purposes, investment in vehicle not persuasive evidence of independence).

In contrast to plaintiff's investment, the record contains evidence that ASAP maintained its own offices, including administrative staff and office equipment, and owned its own trucks, forklifts and loaders.  Presumably, these investments bolstered ASAP's overall operation.  In addition, ASAP reimbursed plaintiff for gasoline costs and provided him with equipment necessary to complete certain deliveries, including coolers, dry ice, dollies and keys for various businesses to which plaintiff made deliveries.  Given the relative insignificance of plaintiff's investment when compared to these investments, the Court finds a genuine issue of material fact whether plaintiff acted as an independent

contractor by investing in the delivery business.

**IV.     Permanence Of Working Relationship**

Independent contractors often have fixed employment periods and transfer from place to place as particular work is offered to them, whereas employees usually work for only one employer and such relationship is continuous and of indefinite duration. Dole, 875 F.2d at 811. ASAP argues that plaintiff acted as an independent contractor because he worked for less than six months and was able to assign his duties under the parties' agreement at will. By itself, the short length of plaintiff's employment does not necessarily demonstrate that he acted as an independent contractor. See Baker, 137 F.3d at 1443 (question is whether plaintiff was economically dependent on defendant during period of work, however long or short). The record contains no evidence that ASAP hired plaintiff for a fixed employment period, and plaintiff understood that his agreement with ASAP was not limited in duration, which suggests employee status. See Dole, 875 F.2d at 811 (individual expectation of indefinite period of work suggests employee status). ASAP did not hire plaintiff on a piecework basis of particular deliveries or certain shifts. To the contrary, once ASAP hired plaintiff, he worked on a continuous basis. As noted above, plaintiff worked exclusively for ASAP from April to September of 2005. This evidence suggests employee status. See Henderson v. Inter-Chem Coal Co., 41 F.3d 567, 570 (10th Cir. 1994) (work not confined to specific project, but performed as needed or requested by employer suggests employee status). On this record, the Court finds a genuine issue of material fact whether the permanence of plaintiff's work suggests that he functioned as an independent contractor.

**V.      Degree Of Skill**

A requirement of specialized skill is indicative of independent contractor status. See Dole,

875 F.2d at 811 (lack of specialized skill requirement indicates employee status). ASAP does not argue that plaintiff required specialized skills to perform his duties. The record contains evidence that plaintiff could not negotiate pay based on his level of experience, which suggests employee status. See Baker, 137 F.3d at 1442 (fact that employer did not negotiate pay based on experience suggests employee status). Indeed, "[t]here is little to be said about the skill and initiative required in order for [delivery] drivers to perform their jobs." Sakacsi, 2007 WL 4218984, at *8. Without evidence of specialization, the record does not support the contention that plaintiff acted with the skill of an independent contractor. The Court therefore finds a genuine issue of material fact whether plaintiff exercised the specialized skill of an independent contractor.

## VI.    Extent To Which Work Is Integral To Business

In determining employee status under the FLSA, the Court considers whether the type of work which plaintiff performed is an integral part of defendant's business, Dole, 875 F.2d at 811, and presumes that with respect to vital or integral parts of the business, an employer will prefer to engage an employee rather than an independent contractor, Baker v. Dataphase, Inc., 781 F. Supp. 724, 735 (D. Utah 1992). ASAP argues that plaintiff's work was not integral to its business because he was one of several delivery drivers and worked for only a few months. As noted above, however, the Court considers the *type of work* which plaintiff performed; it does not consider plaintiff's work in a vacuum. As a delivery service, ASAP cannot function without delivery drivers. The significance of their work is evidenced by the agreement which requires drivers to give 30 days notice of termination so that ASAP may secure replacement drivers without upsetting its operation. On this record, the Court finds a genuine issue of material fact whether plaintiff performed a type of work which was integral to the delivery business.

Because a trier of fact could make findings as to each factor of the economic realities test which would support the legal conclusion that plaintiff acted as an employee, rather than an independent contractor, ASAP is not entitled to judgment as a matter of law. Henderson, 41 F.3d at 571; see also Herr v. Heiman, 75 F.3d 1509, 1513 (10th Cir. 1996) (controverted evidence as to factors of economic realities test precludes summary judgment because trier of fact must consider totality of circumstances). Accordingly, the Court overrules the motion for summary judgment.

**IT IS THEREFORE ORDERED** that Defendant's Motion For Summary Judgment ("Defendant's Motion") (Doc. #17) filed November 5, 2007 be and hereby is **OVERRULED**.

Dated this 21st day of March, 2008 at Kansas City, Kansas.

s/ Kathryn H. Vratil
Kathryn H. Vratil
United States District Judge